24-1174, Western Missouri, United States v. Larry Bradley May it please the court, Mr. McIntyre is over. All right, you may proceed. Thank you. Rebecca Kurz on behalf of Mr. Larry Bradley. This is a felon in possession case that at sentencing a cross-reference to the voluntary manslaughter guideline was applied and that more than doubled Mr. Bradley's guideline range and put him at the statutory maximum of 120 months. The application of the cross-reference boiled down basically to two witness accounts included in the pre-sentence investigation report. One witness was Ms. Dina Bunger, who said the victim did not have an axe in his hands when my client shot him. And the other witness was Mr. Charles Nichols. He was the owner of the residence where the shooting occurred. And he said that the victim had either an axe or a baseball bat in his hands when my client shot him. My first point I want to make is that at sentencing, the district court said that it found Ms. Bunger to be a credible witness. She had testified at trial, although she didn't testify as to whether the victim had anything in his hands. But she did not testify at sentencing and we don't have any reason as to why she did not show up for sentencing. But I think the credibility determination doesn't decide this case because it's based on a few clearly erroneous facts. Ms. Bunger was on probation at the time of the shooting. But the court indicated that there was no evidence that she had violated her terms of probation by being in the residence at the time the shooting occurred. But in her trial testimony, Ms. Bunger actually admitted that she was on probation for her third methamphetamine conviction. She violated it by living at a residence not approved by her PO. She said they thought I was supposed to be living somewhere else. And she also admitted that she violated her probation by associating with other felons, which she said was a specific condition of her probation. I'm referring to pages 35 and 36 and pages 44 through 46 on that. The court also said that the residence, there wasn't necessarily any criminal activity going on at the residence. The court said just because homeless people live in the residence doesn't mean that anything illegal is going on there. But again, Ms. Bunger in her trial testimony specifically said that she knew there was drug activity in the house. So I think if I were, well, and then one more. In paragraph two of the PSR, she initially lied to the police and said she was just visiting the residence that night. But she had actually lived there for four years. So let's suppose that all of those factual findings are clearly erroneous. It's my understanding that application of the cross-reference guideline just requires a preponderance of the evidence that Bradley did not act in self-defense. Why isn't there still enough evidence to meet that standard? And I know the government does admit that there is evidence on both sides. The government admits there's evidence on both sides. And I think the government's position, I don't want to mischaracterize it, is that the version of events that the district court adopted was plausible in light of the entire record. Therefore, it cannot be clearly erroneous. I don't think it's plausible in light of the record at all, though. We have to remember there was actually an axe found. So after the shooting, my client says the victim came at him with an axe. He says, I took my firearm and I grabbed that axe and I ran. He hid both weapons. He's caught very soon thereafter, leads the officers to the axe and to the firearm. How did the axe get there? Isn't the hiding of the axe, taking the axe, and the hiding of the axe evidence of guilt? I don't think so. He said, I mean, you could possibly interpret it that way. I do not. He said he grabbed the axe because he didn't want someone coming after him with the axe and use it against him. Here's what I find not plausible, though. If the axe is found, if Mr. Willett didn't have the axe in his hands or nearby, where does it come from? Mr. Bradley would have had the thought to himself, well, I need the victim to have a weapon so I can make this look like self-defense. He's got to go through the house and he's got to find a weapon. So under the government's theory, I guess he found the axe and took it with him. But the problem with that is the witnesses at the residence are interviewed that evening. And Charles Nichols says, well, my recollection is Mr. Willett had either an axe or a baseball bat in his hands. So where did Mr. Bradley and Mr. Nichols have the time to meet up and concoct a self-defense theory where they put an axe into the victim's hands? To me, that just makes the whole thing implausible. I don't see how that happens based on anything in this record. And I understand that deciding a cross-reference by a preponderance of the evidence is a lower standard, but it has to have some teeth to it. Also, as far as other things that the district court relied on, the government argued that when Mr. Bradley gave his statement to the police, he admitted that before Willett got the axe, he said, hey, don't make me do this. And the government said, well, that made Willett feel like he had to go get the axe. And so I don't think the government used these words, but I think they were basically saying Bradley was the initial aggressor. But if you look at that statement in context, and this is in the government appendix, page four, Willett started harassing me. He started coming at me physically. I told him, leave me alone. Stay away from me. I said, don't, repeatedly. I got up. I moved away from him. Then he said, don't make me. Page 15, he said, I had a gun in the pouch of my hoodie because I was afraid of him. Page 20, as I was sitting on the couch, he was hovering over me. Willett said, why do I feel like I'm about to get shot? Bradley said, you're not about to get shot. Page 24, he started getting aggressive with me, and I said, stay away. When asked why not just hand over the gun to Willett, why not just give him what he wanted, Bradley said, because I was afraid of him. Again, page 26, he says, stay away from me. Don't make me do this. As I said that, I was backing away. And that's when Ms. Bunger entered the room and knocked him over onto the floor. The district court said, well, I don't believe Mr. Nichols because Nichols, you know, he says he had an ax, but he says he never saw Mr. Bradley with the gun. The gun was in the hoodie pocket. Mr. Bradley actually told the police, you know, I actually thought I shot through this thing, but I must have gotten my hand out. No hole in the hoodie, as I was assuming what he's referring to. So the fact that Mr. Nichols didn't see a gun isn't all that surprising, given it was concealed in the hoodie pocket for most of the events. But we also don't know where people were positioned in the room. I can point to things in the record that make this not plausible. I don't think it's good enough that we can massage this evidence and make it somehow plausible when the government doesn't go to the trouble of explaining, well, why is Mr. Nichols wrong? Where is everybody seated in the room? What were these statements? Who were the police officers that took the statements and did they find these witnesses credible? Some of them were audio taped. Why not listen to the audio tapes? The government has the PSR and says it's enough for one woman to say, no, he didn't have anything in his hands, and we're going to double his guideline range. Thank you. Mr. Wagner. May I please the court? Sure. I'm David Wagner for the United States. The district court had a challenging job in this case. It had to sort through conflicting evidence to figure out whether Mr. Bradley killed Thomas Blake Willett in self-defense. But on appeal, this court's job should not be nearly so difficult. The only question on appeal is whether the district court clearly erred when it found that Mr. Bradley did not act in self-defense when he shot and killed Mr. Willett. Is that really the standard of review? Is a conclusion whether someone acted in self-defense a factual finding or a legal conclusion? Judge, I believe it's a factual finding. It obviously depends on a number of subsidiary factual findings. Wouldn't it be a legal conclusion based on factual findings? I don't think so. I think it's still a factual finding. And I think this court's, the cases discussed in the brief, I think, support that it's a factual finding. In this context, in a sentencing context, it needs to be by a preponderance of the evidence. And aren't we also dealing with a preponderance of the evidence standard for application of the cross-reference guideline? Absolutely. And it is, I acknowledge, it is the government's burden to prove by a preponderance of the evidence in this case that Mr. Bradley did not act in self-defense. And I think the government met its burden in this case. You know, that's kind of a tricky thing because the burden is on the government to prove to a preponderance of the evidence that voluntary manslaughter was committed, right? Yes. And that means you have to prove the absence of self-defense in order to prove voluntary manslaughter because you always do, right? Correct. Now, it's an element to the offense as well, right? So when we instruct people on voluntary manslaughter, we tell them the government bears the burden of proving beyond a reasonable doubt the absence of self-defense, right? It's either an element or an affirmative defense. I don't think it really matters. It's still the government's burden. Yeah, but the government always bears the burden of proving it beyond a reasonable doubt at that point. So this gets really tricky, right? When you look at, when we're going to apply the, you find the existence of voluntary manslaughter to a preponderance, right? Yes. And, you know, that's the standard. But what do we do with the fact that to prove the crime, we have to prove the absence of self-defense beyond a reasonable doubt? Does that matter at all? Or do we just still take the whole thing globally and look at it? And I think if you read the guidelines, it seems to indicate that you just take the whole thing and look at it as to a preponderance of the evidence. Is it likely that voluntary manslaughter has been proven, right? Yes. But it's a weird thing because of the kind of mixed burden for the self-defense in this thing because self-defense rises in both places, right? I'm not sure I think it's quite that complicated. I'm over-complicating it. This wouldn't be the first time I do that. Well, as I understand it, the standard of proof for the sentencing hearing is preponderance of the evidence, both for proving the voluntary manslaughter crime and for disproving self-defense, whether it's considered an element of the crime or an affirmative defense. The burden remains the same.  And so it remains the same in the fact that some kind of an element or a defense in the underlying crime is not before us. Well, the question of – Except to the preponderance. Exactly. So what it all boils down to essentially in this particular appeal is did the government prove by preponderance of the evidence that Mr. Bradley did not act in self-defense? There's too many negatives in that issue statement, but that's the issue. Yeah. The question is simply does the evidence preponderate to the absence of self-defense? Yes. And that was the issue before the district court, now in appeal. The question is whether there was clear error in finding the government met its burden. And that's a fact question, in your opinion, because the self-defense is a fact issue. Yes. In a trial, it would be a fact found by the jury. I'm sorry. Judge Graz, did you have a question? Could you walk us through the evidence that you feel creates a preponderance of evidence that he did not act in self-defense? Absolutely. In the context, the context was referred to earlier, and context in this case really is key. Because you've got to remember, this shooting did not just happen out of nothing, essentially. There were important events that led up to it that the district court, I think, found compelling in reaching its finding. First of all was Mr. Bradley's motive. Mr. Bradley told police that Mr. Willett's girlfriend, Mr. Willett, the victim's girlfriend, had sold him fake drugs. He also said that Mr. Willett's girlfriend That's kind of a stretch, isn't it? I'm going to kill you because your girlfriend did something? Well, I don't think to Mr. Bradley. Because on the day of the shooting, there was essentially two conversations between Mr. Bradley and Mr. Willett. The first one was about the fake drugs. And Mr. Bradley said he asked Mr. Willett about it, and Mr. Willett thought it was funny. That evidently upset Mr. Bradley because he said he went back to his room and smoked a joint to mellow out. So it seemed to be a pretty big deal to him. And he had to go essentially collect himself and try to calm down. And then there was a second conversation that happened immediately before the shooting, which was about the gun. And Mr. Bradley, during his interview with police, was a little bit cagey about where he thought this gun came from. But he ultimately acknowledged that he believed it was Mr. Willett's gun. And that Mr. Willett was upset with him for taking his gun. So that was Mr. Bradley's motive. He also talked about how he believed that Mr. Willett and his girlfriend had stolen power tools from him and had stolen his backpack. He was clearly upset with Mr. Willett. And he made threats against Mr. Willett when talking to other people. At trial, Ms. Bunger, the witness whose testimony is also summarized in the PSR, said that she heard Mr. Bradley say that he wanted a gun and he wanted to shoot Mr. Willett. At the first sentencing hearing, a witness named Sonya Patton testified about hearing Mr. Bradley say that he wanted to teach Mr. Willett a lesson and he wanted, or to make him pay, essentially. And I think it's also important to note that she testified at the first sentencing hearing that she relayed those threats to Mr. Willett. And she told him to watch his back. So going into this conversation that immediately preceded the shooting, Mr. Willett would have known that Mr. Bradley had made threatening statements against him. And I think that colors what happened during that conversation. Of course, the district court credited Ms. Bunger's statement in the PSR that Mr. Willett had nothing in his hands when he was shot. Now that, to me, isn't that what this all boils down to? Tom, was, did the victim, you know, there's this assertion of justification. And Bradley says that Willett, I think, left the room and came back with an axe. Bunger says, no, he didn't have any, he was not armed. And Bunger told the probation officer, as recorded in the PSR, the same thing, right? Correct. So is that what it comes down to, is who do you believe? Is the court going to believe Bradley? Is the court going to believe Bunger? Exactly. I mean, that's our position and that's a credibility determination for which a district court has wide latitude. One thing I'd like clarification on, counsel, is that one thing that the court seemed to use against Bradley was the statement, don't make me do it, which allegedly occurred prior to Willett going into another room and getting an axe. The court didn't seem to believe that Willett did go get an axe. So how could it believe that this scenario took place where Bradley said, don't make me do it? Are they believing part of the scenario and not all of the scenario? Yes. Are they cherry picking? I think the court is selecting which parts of Mr. Bradley's testimony it found to be credible. So it believes that he said, don't make me do it. Yes. But then Mr. Willett did not go get an axe. Correct. Even though they found an axe. They did find an axe, yes. Where that axe came from, I think we probably will not know. And the witness testified that he was holding an axe or a baseball bat. Ms. Bunger's statement in the PS, well, Mr. Nichols' statement in the PSR said that, yes. He did not testify. The district court, and I think that's important, the district court never had an opportunity to evaluate Mr. Nichols' credibility as a witness. Ms. Bunger did testify at trial at great length about the circumstances surrounding the shooting. And while she didn't say one way or another at trial whether Mr. Willett had an axe, the district court was able to evaluate her credibility as a witness. And I think that's an important part of the district court's credibility finding. I know that Mr. Bradley has taken issue with some of the district court's subsidiary findings. I don't think the district court was purporting to make any sort of definitive findings about whether Ms. Bunger violated her probation conditions, whether there was criminal activity going on in the home. And I would encourage the court to look very carefully at what the testimony was and what the district court said. For example, the district court said whether there was a condition she was supposed to associate with other felons, I don't know if that was a condition or not. What the testimony was was that Ms. Bunger said her probation conditions prohibited her from associating with anyone who was committing a felony. It's a little different than associating with felons. So I don't think the district court was making any definitive findings, and I also would encourage the court to look at exactly what the testimony was and exactly what the district court said. I see that I am almost out of time. If there are no further questions, I would ask the court to affirm. Thank you. Thank you, counsel. Ms. Kersh, you have just under two minutes. Addressing the government's argument that Mr. Bradley had threatened Mr. Willett days before, if you look at paragraph 6 of the PSR, text messages were found on the victim's phone that say, I'm not going to use the colorful language, but I'm going to kick your behind. He threatened to assault him. So this is going both ways. It's not one-sided where Mr. Bradley is the only person making threats. Mr. Willett was also very angry. The witnesses, the government representative mentioned Sonia Patton, I believe it was, who had said that Bradley had said, I'm going to teach that guy a lesson. I don't like what he's doing. The government put on Sonia Patton at the initial sentencing hearing because it was asking for a cross-reference to murder too. That was their evidence of malice aforethought. And the judge obviously didn't buy it. So I don't think that Sonia Patton was really this incredibly persuasive witness for the district court. I think it was interesting that the government said, we will probably not know where the ax came from. That's a pretty crucial fact for this case. It did come from somewhere. And it makes no sense that Charles Nichols saw Willett with an ax. And there was no opportunity between Bradley and Nichols to concoct a story. Counsel, was there any evidence presented at sentencing as to why Bradley was not charged for killing Mr. Willett by state authorities? There was not evidence, there was argument. He was never charged by Jackson County with any homicide. And that's why I think it's important. Why not bring in the audiotaped statements of the witnesses? Why not show those to the court and have the court have a better understanding? Okay, well now I know why the state court didn't charge this homicide. Thank you. All right. Thank you, counsel. Case is submitted. Appreciate your argument this morning. You may stand aside.